UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PATRICK BASS, *et al*.,                          )
                                                 )
        Plaintiff,                               )
                                                 )
v.                                               )        CIV. ACT. NO. 1:20-cv-7-TFM-MU
                                                 )
M/V/ STAR ISFJORD, *et. al.*,                    )
                                                 )
        Defendants.                              )

## MEMORANDUM OPINION AND ORDER

On August 19, 2024, the Magistrate Judge entered a Report and Recommendation which recommends the Defendants' motion to enforce settlement (Doc. 174, filed 2/15/24) be granted. *See* Doc. 204.  Plaintiff Patrick Bass submitted objections – one set timely and one set beyond the deadline.  *See* Docs. 205, 207.  Plaintiffs' counsel timely filed a response to the first set of objections as officers of the court.  *See* Doc. 208.  Defendants also timely filed a response to the objections.  *See* Doc. 209.  The Report and Recommendation is now ripe for review.

The Court is well familiar with this case having sat through eight (8) days of the non-jury trial along with issuing several substantive rulings (e.g. summary judgment and judgment as a matter of law).  On the eve of closing arguments, the parties indicated to the Court that they had reached a settlement and requested the Court take down the settlement.  To avoid any future issues given that this was a non-jury trial (which ended up being prescient), the undersigned declined to be involved in the settlement.  The Court initially tried to find another judge to take the settlement, but none was readily available. Instead the Court directed the parties to present the information for transcription to the Court Reporter as judicial approval was neither required for a settlement between private parties.  As is customary, the Court gave the parties time to finalize the paperwork

and consummate the settlement process. *See* Doc. 163. The parties had indicated they needed approximately sixty (60) days to complete the process and so the Court gave them until January 8, 2024 to submit their dismissal paperwork or a status report indicating a timeline for completion. *Id*.

On January 8, 2024 the parties indicated they had negotiated over terms of the release and were awaiting Patrick Bass' approval and signature. *See* Doc. 164. Plaintiff's counsel had also been negotiating the resolution of the liens related to medical bills through the workers' compensation carrier. As a result, they requested a short extension to January 12, 2024. *Id*. The Court granted the request. *See* Doc. 165.

On January 16, 2024, the counsel submitted a joint status report that indicated that Plaintiff Patrick Bass has refused to execute the negotiated release, refused to discuss settlement of the workers' compensation carrier, and aired grievances relating to both actions with his counsel. *See* Doc. 166.

As a result of the impasse, the Court entered an order referring the issue to the Magistrate Judge noting "[a]s this is a bench trial, the undersigned prefers to remain uninvolved in determining the problems that may have arisen unless and until there are no other options." Doc. 167. Since January 2024, the Magistrate Judge has worked at the behest of the parties both with official hearings and with unofficial settlement conferences.

Now the Court has before it the Report and Recommendation (Doc. 204) which recommends the motion to enforce settlement agreement be enforced and compel the execution of the release. Objections were due within fourteen (14) days – which was September 3, 2024 due to the Labor Day holiday. Plaintiff Patrick Bass submitted two sets of objections. *See* Docs. 205, 207. The first set is timely as it was filed within the 14-day deadline of the Report and

Recommendation (on September 3, 2024). *See* Doc. 205. The second set was filed on September 10, 2024 and is unsigned though it has a typed signature from Patrick Bass.

The Court notes first that the first objections are signed by Patrick Bass though the beginning references "we, the plaintiffs". *See* Doc. 205 at 1. 28 U.S.C. § 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct causes therein." As Patrick Bass is not a lawyer, he cannot represent his wife in these proceedings. As the document is not signed by Jocelyn Bass the Court is required to note that it can only be considered on behalf of Patrick Bass. This is further consistent with the evidentiary record which shows that Patrick Bass and Jocelyn Bass are not entirely aligned in their interests to finalize this settlement. *See, e.g.,* Doc. 192 (letter from Mr. Bass); Doc. 197 at 66-72.

The second set of objections are untimely, do not contain a signature as required by Fed. R. Civ. P. 11(b), and still attempt to make objections on behalf of both Plaintiffs though the Jocelyn Bass' signature is not on the document in either typed or written format. Therefore, the second set of objections cannot be considered for all three reasons. Regardless, the Court has done a cursory review and finds the objections are not specific to the analysis of the Magistrate Judge but contain the same generalized grievances regarding the settlement, the debate relating to the overall settlement terms and his attorneys' authority, and unhappiness with the challenges involved in protracted litigation.[1]

---

[1] While the Court is certainly sympathetic to the fact that from a party's perspective litigation is long and burdensome, the Court also notes that this was a complicated case further hampered by the fact that Plaintiff required additional medical treatment and surgeries which resulted in a delay before it could proceed to trial. Unfortunately, this is common in personal injury cases. It is no one's fault, but is a reality often faced in the civil litigation process.

Plaintiffs' counsel also filed a response to the objections noting several issues with Mr. Bass' first set of objections.  *See* Doc. 208.  Counsel provides a list of items to which Mr. Bass did not provide specific objections to the findings or recommendations noted by the Magistrate Judge. *Id*.  Defendants also filed a response to the objections which note the general, non-specific nature of the objections.  *See* Doc. 209.

Ultimately, the Court agrees that the Mr. Bass' objections lack specificity in objecting to the specific findings of the Magistrate Judge and would likely not merit a *de novo* review and the Court would be well within its discretion to apply only a clearly erroneous standard.  But, out of an abundance of caution, because there are a few specific comments that might be construed as challenging certain findings, and as Mr. Bass proceeds *pro se* here), the Court applies a *de novo* review to the findings as they relate to Mr. Bass (and him alone).  The Court applies clear error review as to Jocelyn Bass.

The Court now relies upon the factual and procedural background relevant to the instant motion as articulated in the Report and Recommendation.  *See* Doc. 204 at 1-10.  While the Court agrees with the ultimate conclusion on enforcement of the settlement, the Court has certain portions with which it disagrees or intends to supplement.  Those will be addressed below.

## A.      Sealing and Confidentiality

The Court first notes one required modification to the Report and Recommendation even before addressing the main substance.  The recommendation redacts the settlement amount and states in a footnote that "[b]ecause this is a settlement between private parties who agreed to keep the amount of the settlement confidential as a material term of their agreement and because the amount of the settlement is not necessary to a determination of this motion, the Court has found it proper to redact the amount of the settlement here."  Doc. 204 at 2 n.1.  The Court disagrees that

the amount can be redacted or sealed based on the binding Eleventh Circuit case law.

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "The operations of courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978)). The Eleventh Circuit recently reaffirmed the need for "resolute" enforcement of the presumption that the public should have access to judicial records. *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1359 (11th Cir. 2021). "The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Romero v. Drummond Co.,* 480 F.3d 1234, 1245 (11th Cir. 2007) (quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)). "What happens in the halls of government is presumptively public business. Judges deliberate in private, but issue public decisions after public arguments based on public records." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). The common-law right of access favors access to judicial records and includes "the right to inspect and copy public records and documents." *Chicago Tribune*, 263 F.3d at 1311. However, the right is not absolute. *Id*. It does not apply to discovery, and where it does apply, it may be overcome by a showing of good cause. *Romero*, 480 F.3d at 1245.

"[M]aterial filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right." *Chicago Tribune*, 263 F.3d at 1311-12; *see also Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1166 (11th Cir. 2019) ("The common law right of access to judicial records establishes a general presumption that

criminal and civil actions should be conducted publicly and includes the right to inspect and copy public records and documents.  It is an essential component of our system of justice' and 'is instrumental in securing the integrity of the process." (citations and internal quotation marks and modifications omitted)).  "[T]he need for public access to discovery is low because discovery is 'essentially a private process . . . the sole purpose of which is to assist trial preparation.'" *Romero*, 480 F.3d at 1245 (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)).  In short, the distinction lies in the comparison of "material filed with discovery motions and material filed in connection with more substantive motions." *Chicago Tribune*, 263 F.3d at 1312.  By way of an example, attachments to a motion to compel are not subject to the common-law right, whereas attachments to pretrial motions which require judicial resolution on the merits are subject to the common-law right.  In the latter category, one may only overcome the common-law right by a showing of good cause.  *Romero*, 480 F.3d at 1246.  This standard parallels the "good cause" standing of Fed. R. Civ. P. 26(c) governing protective orders.  The good cause "standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Tribune*, 263 F.3d at 1313.  When considering that balancing test, the *Romero* Court stated as follows:

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246.

"[T]he judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it).  He may not rubber stamp a stipulation to seal the record." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins.*

*Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (citations omitted).

Here, the motion to enforce settlement requires judicial resolution on the merits and is, therefore, subject to the common-law right of access to judicial records, which one may only be overcome by a showing of good cause. Further, the Eleventh Circuit has noted

> "It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."

*Brown v. Advantage Eng'g, Inc.,* 960 F.2d 1013, 1016 (11th Cir. 1992); *see also Callahan*, 17 F.4th at 1365 ("The interests served by judicial openness extend far beyond the bounds of any particular case. As we have long recognized, when 'a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'" (quoting *Brown*, 960 F.2d at 1016)); *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 835 (7th Cir. 2013) ("In neither case have [the parties] offered any reason for secrecy except that they have a confidentiality agreement. Obviously, that's insufficient, and I could stop there; because there is potential public value to disclosing the settlement terms, including amount, parties have to give the judge a reason for not disclosing them - and the fact that they don't want to disclose is not a reason."); *Herrnreiter v. Chi. Hous. Auth.*, 281 F.3d 634, 636-37 (7th Cir. 2002) ("Now that the agreement itself has become a subject of litigation, it must be opened to the public just like other information. . . that becomes the subject of litigation."); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) ("Once a settlement is filed in district court, it becomes a judicial record. . . . The presumption in favor of the public's common law right of access to court records therefore applies to settlement agreements that are filed and submitted to the district court for approval." (citations omitted)); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986) ("Having undertaken to utilize the judicial process to interpret the settlement and to enforce

it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded settlement agreements. Once a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records.").

Based on the above, the Court cannot find that simply because the parties agreed to a confidential settlement that it renders the amount immaterial to the motion. The parties made the settlement agreement an issue that required judicial resolution.   Therefore, despite any prior agreement to keep it confidential, that falls way to the public access to courts.  The Court notes that according to the certified settlement agreement transcript, "[t]he settlement will include payment to plaintiffs in the amount of $4,250,000. This is a full and final settlement of all claims and all causes of action whether pleaded or not."  This includes the claims remaining from Plaintiff Patrick Bass and the previously dismissed claims for Jocelyn Bass.  Finally, "[t]he parties will bear their own costs and attorneys' fees. Any and all liens will be covered by the plaintiff."

Accordingly, the Clerk of Court is **DIRECTED** to unseal Document 192-1.  The Court Reporter is **DIRECTED** to docket the certified settlement agreement transcript (which the Court notes will be duplicative of the Document 174-1 from the motion to enforce settlement except that it removes the redaction).  Finally, Defendants are **ORDERED** to submit unredacted copies of Document 174-2.

Now that the Court has resolved the issue of sealing and confidentiality, the Court turns to the primary matter at hand – the enforcement of the settlement agreement as recommended by the Magistrate Judge.

## B.   Enforcement of Settlement Agreement

"Federal courts possess certain inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*,

581 U.S. 101, 107 (2017) (citation and internal quotation marks omitted).  One such "inherent power [is] to . . . enforce settlement agreements entered into by parties litigant in a pending case." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967).[2]

At the outset, this is not a case where the plaintiff contends the attorneys settled his claims without his authority to do so.  Plaintiff was consulted, accepted, and agreed on the record to the outlined terms.  The questions presented are (1) whether Mr. Bass was competent to enter into a settlement agreement and (2) whether Mr. Bass had the same understanding of the terms of the settlement as everyone else. The Court will address his mental competency first followed by the understanding.

Having reviewed Mr. Bass' *pro se* objections and other submissions, the Court finds that they are due to be overruled.  In addition to the analysis made by the Magistrate Judge in the Report and Recommendation, the Court is well aware based on the evidence presented at the bench trial that Mr. Bass took numerous medications and that he took them throughout the proceedings depending on his level of pain and discomfort.  In fact, the Court extended to the Plaintiff the ability to come and go as needed based on his health and level of pain.  Plaintiff exercised that ability throughout the proceedings.  The Court also had the opportunity to observe Mr. Bass during the trial – both on the stand during his testimony, while he remained in the courtroom, and even when he left. Plaintiff acknowledges that he was on those same medications throughout that time frame.  The Court cannot find that Mr. Bass had a diminished capacity solely because he alleges now that he took those same medications before he accepted the settlement agreement.  To hold

---

[2] *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

otherwise would in essence invalidate the entirety of his testimony at trial when it was clear that he was competent and capable of providing such testimony.  Further, Mrs. Bass, who was also present, gave no indications that he was not competent.  The Court also notes that after the settlement offer was presented to the plaintiffs, Mr. Bass took some time to discuss with his attorneys and his wife.  Though it may not have been a lengthy contemplation, that does not make it uninformed.  No person raised any concerns about Plaintiff's competency and the Court notes that Plaintiff's wife and his counsel have extensive experience with interacting with Mr. Bass including when he is not in a position to make decisions.  Moreover, Mr. Bass remained an active participant in the discussions related to finalizing the settlement paperwork.  It was not until after the motion to enforce was filed that Mr. Bass raised capacity as an issue.  This was many months after the initial oral settlement.

The Court now turns to Mr. Bass' understanding of the terms which is seemingly the second issue that he raises.

Defendants assert that federal law determines whether a settlement agreement is valid when the substantive rights and liabilities of the parties derive from federal law.  Doc. 174 at 3-4 (citing *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984)).  The Report and Recommendation seemingly assumes that Alabama state law applies.  *See* Doc. 204 at 11 (citing Alabama contract law cases).

However, that matter has not been entirely resolved within the Eleventh Circuit and federal courts have gone both ways.  *See Hogan v. Allstate Bev. Co.*, 821 F. Supp. 2d 1274, 1279 (M.D. Ala. 2011) (citing competing cases in applying federal common law and state law).  In a similar situation involving oral settlement of federal claims, some courts have enforced them using principles of federal common law.  *See, e.g., Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207,

1209 (5th Cir. Dec. 7, 1981)[3] ("[For cases dealing] with the operation of a Congressional statutory scheme, the federal courts are competent to determine whether a settlement exists without resort to state law. . . . Creation of a federal rule rather than absorption of a state rule is appropriate where . . . the rights of the litigants and the operative legal policies derive from a federal source." (citations omitted)).  Others have applied state contract law to interpret settlement agreements even when a plaintiff's claims derive from federal statutes.  *See Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347 1350 (11th Cir. 2000) (applying Florida law to construe a settlement under the Americans with Disabilities Act of 1990, *as amended*, 42 U.S.C. § 12101, *et seq.*); *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1253 (11th Cir. 1999) (applying Georgia law to construe a Title VII settlement).

Digging further, the Court finds that the Supreme Court has indicated "federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases."  *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981) (footnotes omitted); *see also id*. at 641 n.14 (citing *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (Jones Act case); *Fitzgerald v. United States Lines Co.*, 374 U.S. 16 (1963) (Longshore and Harbor Workers' Compensation Act case.

As this is a case brought under 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), it would appear admiralty piece of the federal common law is implicated.  Generally, federal maritime law governs interpretation of a settlement agreement that is a "maritime contract."  *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1354 (S.D.

---

[3] *Fulgence* was decided by the Fifth Circuit after September 1981.  Therefore, it is persuasive but not binding under *Bonner*, 661 F.2d 1206.

Fla. 2007) (citing *Alcoa Steamship Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967)). The character and nature of a contract is considered maritime if it "has reference to maritime service or maritime transactions." *Nehring v. Steamship M/V Point Vail*, 901 F.2d 1044, 1048 (11th Cir. 1990) (citations omitted). Maritime contracts "must pertain directly to and be necessary for commerce or navigation upon navigable waters." *Id.* (citations omitted).

"In the absence of a factual basis rendering it invalid . . .an oral agreement to settle a personal injury cause of action within the admiralty and maritime jurisdiction of the federal courts is enforceable and cannot be repudiated." *Strange v. Gulf & S. Am. S.S. Co.*, 495 F.2d 1235, 1236-37 (5th Cir. 1974) (citing *Baska v. Western Agency, Inc.*, 485 F.2d 582 (5th Cir. 1973); *CIA Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967); *Gilbert v. United States*, 479 F.2d 1267 (2nd Cir. 1973); *Harmon v. United States*, 59 F.2d 372 (5th Cir. 1932); *Beckham v. Reed, Kapt. H. Krohn, G.M.B.H.*, 217 F. Supp. 749 (S.D. Tex. 1963); *Dagounakis v. Santa Madre*, 183 F. Supp. 54 (E.D. Va. 1959), *aff'd*, 277 F.2d 461 (4th Cir. 1960)).[4]   As the Court finds no contrary Eleventh Circuit opinion issued after 1981 in terms of admiralty and maritime law, the Court finds that this holding is binding, the LHWCA claims are maritime and admiralty in nature, and therefore federal common law controls.  In fact, it would appear that the Eleventh Circuit has implicitly endorsed the holding when it cites *Strange* in *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1517 (11th Cir. 1985).

That said, the main distinction here between the federal common law and the Alabama state law is the fact it was originally an oral agreement memorialized by the Court reporter.  After doing a brief recitation of both federal and Alabama laws on contracts and settlement agreements,

---

[4] The string citation in the *Strange* case did not include the years or an explanation with the *see also* signal.  Therefore, the Court cleaned up the citations for ease of reference.

the Court will address the holding under federal law first and then the alternative holding under Alabama law.

Federal common law does not necessarily require that a settlement be reduced to writing. *See Fulgence*, 662 F.2d at 1209.  "Alabama law typically requires a signed, written document to create a validly executed settlement."  *Hogan*, 821 F. Supp. 2d at 1279 (citing Ala. Code § 34-3-21 (providing that an attorney authorized to settle a client's case "has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing")). That said, if sufficiently detailed, an exchange of correspondence may create an enforceable contract under Alabama law.  *See generally Mays v. Julian LeCraw & Co.*, 807 So. 2d 551 (Ala. Civ. App. 2001) (letters between counsel memorializing oral settlement agreement treated as enforceable). Additionally, "[a]n attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."  Ala. Code. §  34-3-21.

Under Alabama law, whether the parties to a settlement had a meeting of the minds "sufficient to form a contract is judged by objective factors, not the subjective state of mind of a particular party" and depends on the "objective conduct" of the parties. *Alassmar v. City of Homewood*, Civ. Act. No. 2:10-CV-2100-TMP, 2012 WL 13026677, at *4-5[5] (N.D. Ala. Mar. 12, 2012) (citing *Allen v. Allen*, 903 So. 2d 835, 841 (Ala. Civ. App. 2004)).  The Alabama Supreme Court has stated the following with regard to the phrase "meeting of the minds":

> Gonzales's argument is premised upon a misconception of the time-honored phrase 'meeting of the minds.' It is true that there is no contract unless the parties assent to the same thing and in the same sense. But if one seeks to convey his meaning by expressions importing something different, or attaches to the proposition of the other a significance not authorized, whatever injury may result from the

---

[5] The Court did not find a citation available on Lexis as of the date of this opinion.

misunderstanding must be visited upon him. Thompson v. Ray, 46 Ala. 224 (1871). Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach.

Professor Corbin, in his treatise on contract law, speaks to the issue of mutual assent as follows:

> "Agreement consists of mutual expressions; it does not consist of harmonious intentions or states of mind. . . . At present, however, what we observe for judicial purposes is the conduct of the parties. We observe this conduct and we describe it as the expression of a state of mind. It is by the conduct of two parties, by their bodily manifestations, that we must determine the existence of what is called agreement. That is what is meant by the anciently honored term 'meeting of the minds.' That is what is meant by mutual assent.
>
> "[One] may be 'bound' by a contract in ways that he did not intend, foresee, or understand. The juristic effect (the resulting legal relations) of a man's expressions in word or act may be very different from what he supposed it would be. . . . [B]ut it is of much greater importance to realize that the courts must determine the requirements of justice and that the legal effects thus given to expressions of agreement are seldom exactly what one or both of the agreeing parties supposed or expected.' A. Corbin, *Corbin on Contracts* § 9 (1952).

> . . .

> Where a contract is unambiguous and plain in expression, we know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left. *Springdale Gayfer's Store Co., supra*, citing *Lee v. Cochran*, 157 Ala. 311, 313, 47 So. 581 (1908).

*Lilley v. Gonzales*, 417 So. 2d 161, 163 (Ala. 1982).

Despite his protestations to the contrary, Mr. Bass did clearly orally agree to the settlement which was memorialized in the transcript submitted. Therefore, under federal common law as applied to maritime and admiralty cases, the settlement is binding. This is the Court's primary holding which makes it different and in addition to the Report and Recommendation.

The Court finds that it is less clear when applying Alabama law as contemplated by the

Magistrate Judge in the Report and Recommendation.  Despite the fact there is a transcript, it is less clear whether those would constitute "an entry to be made on the minutes of the court" as required by Ala. Code. § 34-3-21.  Further complicating matters is Rule 47 of the Alabama Rules of Appellate Procedure which states:

> No private agreement or consent between the parties or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing, and signed by the party to be bound thereby; provided, however, agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written.

ALA. R. APP. P. 47.  Yet, this case was not at the appellate level nor was it in open court as the judge was not present.  However, as the settlement was orally dictated at the direction of the undersigned, with the same Court Reporter, and in the same transcript as the bench trial itself. Given that the Court has found no definition on the application of "minutes of the court", the undersigned finds that the transcript made in this case is sufficient to satisfy the statute.  Therefore, and in the alternative, the settlement is enforceable under Alabama state law as well.

Based on the undersigned's observations at the trial, review of the record evidence, and the evidence adduced at the hearing on the Defendants' motion, and under the applicable law, the Court finds that the settlement agreement is enforceable as articulated on the record.

"If a party to a [federal] suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement." *Fulgence*, 662 F.2d at 120 (citations omitted).  At the evidentiary hearing below, the evidence established that Plaintiffs not only expressly authorized their counsel to settle the case and approved both the monetary amount offered by Defendants and the general terms.  The bulk of Mr. Bass' arguments relate to his regret that they did not present a counteroffer after being told that this was a take it or leave it offer.  Moreover, Mr. Bass even said on several occasions that he

did not take issue with the amount being offered.  The hearing revealed no taint of fraud, coercion, or overreaching by Plaintiffs' counsel in the negotiations leading to the settlement. There was no evidence that counsel was incompetent or that he colluded with counsel for the defendants.  Where a plaintiff is represented throughout the settlement negotiations by his attorney of choice, the settlement agreement is presumptively informed, willing, and valid.  *See Baptist v. City of Kankakee*, 481 F.3d 485, 488, 490 (7th Cir.2007*); see also Link v. Wabash RR Co.*, 370 U.S. 626, 634 (1962) (noting that a plaintiff who chooses an attorney to represent him cannot avoid the consequences of the acts of that attorney).

Mr. Hufft (Plaintiffs' counsel) also testified at the evidentiary hearing.  He discussed that he explained to the plaintiffs about the amount, that it would include a confidentiality provision, an MSA provision, indemnity, and paying the lien back.  He indicated he explained things in great detail.  Mr. Hufft also testified that Mr. Bass argued vehemently about the confidentiality clause and that Mr. Hufft went out to speak with defense counsel about the confidentiality clause to note Mr. Bass' objection.  However, when defense counsel indicated the term must be there, Mr. Hufft went back to continue the discussion with Mr. Bass.  Mr. Hufft even made a point to say that it was his practice to avoid making a recommendation about a settlement offer.  He finally explained that time was of the essence because there was only one witness left and that the case would be wrapping up with that witness at which time only the judge could decide the result.  After the discussion, Mr. Hufft left for Mr. and Mrs. Bass to discuss the offer and its terms.  Later, once problems began to arise with the settlement paperwork, Mr. Hufft spoke with the plaintiffs and at the time the only issue Mr. Bass complained about was he felt he was denied his right to make a counteroffer and felt pressured because of the time constraint.

What is clear to the Court, not only based on the above, but also during the entire

presentation of the case (motions practice and trial presentation) was that Plaintiffs were represented by extremely competent and able counsel.  The Court finds nothing in the record that indicates Plaintiffs have cause to complain about the adequacy of that representation.  Put simply, contrary to Mr. Bass' arguments, his later protestations, and seeming regret at not negotiating further, it is clear the Mr. Bass entered into a full and final settlement with the Defendants.  Finally, the amount of the settlement ($4,250,000) appears fair in light of the circumstances.  Therefore, Plaintiffs are bound by the terms of the agreement.

To quote the Eleventh Circuit, the Court "cannot allow a litigant to attack the integrity of the settlement process by attempting to recharacterize the focus of his litigation after he decides he is unhappy with the settlement."  *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1487 (11th Cir. 1994).  For the reasons discussed in the Report and Recommendation and in this opinion, the agreement is due to be enforced.

## C.   Compelling Signature on Release

Defendants also seek an order compelling Plaintiffs to sign the release agreement and indicate that is part of the settlement process.  The Court does find that the Release of All Rights for the most part accurately reflects the agreement reached near the end of the bench trial —albeit with a little more "meat on the bones."  The terms align with the oral recitation done on November 8, 2023.  However, the Court does take note of a few matters listed in the release agreement.

### i.   Release Agreement Terms and Required Modifications

These statements are not standard release language, nor were they addressed in the oral recitation to the point the Court can say it accurately reflects the oral settlement.

First, there is a reference at the end of the first paragraph that states:

Further, this Settlement Agreement and Release of all Rights shall encompass any claims, causes of action, etc., as set out in the previously filed and dismissed lawsuit

in the United States District Court for the Southern District of Texas bearing the style, Patrick Bass and Jocelyn Bass v. M/V STAR ISFJORD, Civil Action Number 2:23-cv-00064.

Doc. 174-2 at 6, PageID #1583. At no point in the oral recitation was there a discussion as to a second case filed in the Southern District of Texas. A review of the docket in that case indicates that it was a case involving the seizure of the M/V Star Isfjord predicated on the possibility of judgment in this case. However, the case was also voluntarily dismissed by the Plaintiffs pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). That matter would not be implicated by the settlement in this case as it is neither referenced nor would a lien, arrest of vessel, and sale of boat be needed to satisfy the judgment in this case unless payment was not rendered as required by the settlement agreement. In that case, the Defendants would also be in breach of the settlement agreement which does not yet apply. Therefore, that statement (quoted above) must be stricken. This also means that paragraph 8 on page 8, PageID #1585, should only state "above-referenced lawsuit" as opposed to the plural lawsuits.

Additionally, as noted by the Court previously, by presenting this settlement agreement to the Court for enforcement, the matter is no longer sealed. Paragraph 14 includes standard language about confidentiality. Doc. 174-2 at 9, PageID # 1586. Therefore, this paragraph can no longer be accurate as currently presented given the preceding section on public access to courts. Rather, in lieu of a confidentiality clause, the Court will modify the language to a non-disparagement clause since it is no longer a question of confidentiality, but what can be said about the settlement and parties. Paragraph 14 will now read as follows:

14. Upon inquiry regarding this settlement agreement, the parties may disclose that this matter was resolved to the parties' satisfaction. Each party also agrees not to voluntarily testify regarding any matter contained in or related to this Release, and if any party is subpoenaed to testify regarding this Release, or any of the other matters referenced in this paragraph, that party will notify the other parties in sufficient time for the other parties to seek a protective order or otherwise defend

their interest(s).  The parties also agree to refrain from any defamation, libel or slander of any other party in this litigation.  The parties also agree that they will not at any time engage in any form of conduct or make any statements or presentations (or cause them to be made), whether in writing or orally, that disparage or otherwise impact the reputation or goodwill any other party.

Third, the Court notes that the references to this case include the wrong initials (JB) instead of TFM.  While the case was originally assigned to Judge Beaverstock, the case was reassigned on May 7, 2020 due to an underlying conflict from the previously assigned judge.  *See* Doc. 10. Later, the case also changed from Magistrate Judge Milling to Magistrate Judge Murray.  *See* Docket Entry on January 17, 2024.  Therefore, the action should read as *Patrick Bass and Jocelyn Bass v. M/V STAR ISFJORD, et al*., Civil Action Number 1:20-cv-0007-TFM-MU.  While this would not have invalidated the release agreement, the Court notes that since changes are being made, that should also be corrected.

Defendants are **DIRECTED** to make these changes to the Settlement Agreement and Release of All Rights.  The revised document shall be provided to Plaintiffs' counsel no later than **12:00 p.m. on September 18, 2024**, who shall in turn provide a copy to the Plaintiffs.  Defendants shall also electronically file a copy with the Court.

### ii.    Release Agreement Terms and Required Modifications

Finally, the Court turns to the request to compel Plaintiffs to sign the document. Defendants cite that the Court has the inherent authority to require Plaintiffs to execute the appropriate release.  *See* Doc. 174 at 5 (citing *Kochan v. Schawbenbauer*, Civ, Act. No. 1:17-cv-452, 2020 U.S. Dist. LEXIS 251690, 2020 WL 8812836 (W.D.N.Y. Mar. 10, 2020); *Gautreaux v. Apache Corp*., Civ. Act. No. 07-5653, 2011 U.S. Dist. LEXIS 72340, 2011 WL 2637275 (E.D. La. June 16, 2011)).  However, neither case explicitly makes the holding that the Court can compel the Plaintiffs signature.  Rather, the holdings both indicate an either/or situation.  The plaintiffs

shall either sign the agreement in accordance with the court's opinion or, if they refuse, then the court will enter final judgment dismissing the case with prejudice in accordance with the settlement agreement terms.

This makes sense because ultimately Plaintiffs are presented with a choice. They may either accept that the settlement agreement has been enforced, sign the agreement, and end this litigation with a check in hand (subject to the liens, offsets, and tax implications). Or they may appeal this ruling which will protract the litigation further and subject them to the possibility of more fees and costs against them.[6] To force a signature on a document would deprive them of their appellate rights as to this opinion on the settlement agreement – which the Court cannot do. Therefore, the Report and Recommendation to the extent it recommends that Plaintiffs be ordered to execute the original release contained in the settlement agreement is rejected and the motion is denied.

## **CONCLUSION**

In reviewing the objections, Mr. Bass does nothing to offset the general conclusion of the Magistrate Judge that the settlement is enforceable, and the objections are **OVERRULED**. Therefore, after due and proper consideration of all portions of this file deemed relevant to the

---

[6] Should Plaintiffs appeal this decision, and the Eleventh Circuit agrees with this Opinion on the enforceability of the agreement, then it is possible those costs and fees may be recovered against their settlement, further reducing Plaintiffs' recovery. The Court cannot advise Plaintiffs as to the appropriate course of action – Plaintiffs have very able and competent counsel who can explain their options as well as the consequences of those options. However, the Court recognizes that the relationship between Plaintiffs and their counsel may have deteriorated to the point that Plaintiffs may need to seek new counsel for any appeal and to discuss their options. The Court cannot opine on those issues. But rather, the Court does feel compelled to point out the obvious – (1) protracted appellate litigation with a risk/reward analysis versus (2) the ability to end the lawsuit now given the Court has determined the settlement is enforceable. Only Plaintiffs can decide which action will best serve their interests.

issues raised, and a *de novo* determination of those portions of the Recommendation to which objection is made, the Recommendation of the Magistrate Judge (Doc. 204) is **ADOPTED in part and REJECTED in part**.   The general recitation of facts, the observations about Plaintiff's arguments against the settlement agreement, and the ultimate conclusion to enforce the agreement are adopted.   The portions relating to keeping the settlement amount sealed/confidential and compelling the execution of the release are **REJECTED**.   The portion related to the application of Alabama contract law is modified and supplemented with the federal common law articulated in this opinion.

Accordingly, it is **ORDERED** that the Defendants' motion to enforce settlement (Doc. 174) is **GRANTED** to the extent the Court finds that the settlement agreement is due to be enforced.   The motion is **DENIED** as to the request to compel the Plaintiffs to sign the release agreement.

Rather, it is **ORDERED** as follows:

1. Defendants are **DIRECTED** to make the required changes to the Settlement Agreement and Release of All Rights.   The revised document shall be provided to Plaintiffs' counsel no later than **12:00 p.m. on September 18, 2024**, who shall in turn provide a copy to the Plaintiffs.

2. Plaintiffs shall have until **September 23, 2024** to sign the modified release agreement and return it to their attorneys.

3. No later than **September 25, 2024**, counsel for the Plaintiffs and Defendants shall file a notice with the Court indicating whether the signed modified release agreement was received.

4. Should Plaintiffs refuse to sign the modified release agreement, then by **September 30,**

**2024** the Court will enter an order and final judgment in this matter pursuant to Fed. R. Civ. P. 58 which dismisses this action with prejudice. The Court will incorporate the terms of the settlement agreement and modified release agreement and find in favor of the Defendants as to the motion to enforce settlement.

5. Should Plaintiffs decide to appeal this dismissal, the Defendants shall put the money agreed upon in the settlement agreement in escrow, pending the resolution of the appeal. Otherwise, the payment should be made within fourteen (14) days of receiving the signed modified release agreement in accordance with the settlement agreement.

6. If the case is not appealed, the court retains jurisdiction to enforce any terms of the agreement.

All remaining motions are **DENIED as moot**. Additionally, due to this Memorandum Opinion and Order, there will be no ruling on the merits of the case and the non-jury (bench) trial is considered closed.

In accordance with this ruling, it is further **ORDERED** that:

(1) the Clerk of Court is **DIRECTED** to unseal Document 192-1;

(2) The Court Reporter is **DIRECTED** to docket the certified settlement agreement transcript (which the Court notes will be duplicative of the Document 174-1 from the motion to enforce settlement except that it removes the redaction); and

(3) Defendants are **ORDERED** to submit unredacted copies of Document 174-2.

The Clerk of Court is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the Plaintiffs at their mailing address (Doc. 182). Additionally, Plaintiffs' counsel is **DIRECTED** to send a copy to the Plaintiffs by electronic mail to ensure timely receipt.

**DONE** and **ORDERED** this 12th day of September 2024.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE